IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MICHELLE BARNETT**                                                                 **PLAINTIFF**

vs.                                                   CIVIL ACTION No.: 3:20-CV-623-HTW-LGI

**AMERICAN EXPRESS NATIONAL BANK;**
**EXPERIAN INFORMATION SOLUTIONS, INC.;**
**EQUIFAX INFORMATION SERVICES, LLC;**
**and TRANS UNION, LLC**                                                           **DEFENDANTS**

## ORDER

BEFORE THIS COURT is the defendant American Express National Bank's Motion to Compel Arbitration **[Docket no. 55]**. Plaintiff Michelle Barnett does not contest whether the arbitration agreement is valid and covers the dispute between the parties *sub judice*. Plaintiff, however, opposes such motion saying that defendant American Express National Bank waived its right to arbitration, after plaintiff several times before had requested arbitration, but the defendant had refused to participate. This court finds, in agreement with plaintiff, that the defendant American Express National Bank's Motion to Compel Arbitration **[Docket no. 55]** must be denied.

**I.     JURISDICTION**

Federal courts are courts of limited jurisdiction. The parties have not challenged whether this court possesses subject matter jurisdiction. This court, nevertheless, has an independent obligation to verify it possesses subject matter jurisdiction.[1]

---

[1] Federal courts are obliged to examine the basis for the exercise of federal subject-matter jurisdiction. *Smith v. Texas Children's Hospital*, 172 F.3d 923, 925 (5th Cir. 1999). A federal district court may examine its subject-matter jurisdiction over a matter, *sua sponte*, at any time. *Giles v. Nylcare Health Plans, Inc*., 172 F.3d 332, 336 (5th Cir. 1999) (a court must raise the issue *sua sponte* if it discovers that it lacks subject matter jurisdiction); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2007). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added).
*Dean v. Mozingo*, 521 F. Supp. 2d 541, 551 (S.D. Miss. 2007)(overturned on other grounds).

Federal civil jurisdiction principally arises under Title 28 U.S.C. § 1332[2] and §1331[3]. The former is commonly referred to as diversity jurisdiction, while the latter is hailed as federal question jurisdiction. Plaintiff, Michelle Barnett, filed, on August 24, 2020, her lawsuit in the Circuit Court of Madison County, Mississippi (hereinafter referred to as "state court"), alleging the defendants, American Express National Bank; Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC, had violated the Fair Credit Reporting Act, a federal enactment, found at Title 15 U.S.C. § 1681[4] *et seq*. Defendant Experian Information

---

[2] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

    (1) citizens of different States;

    (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

    (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

    (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C.A. § 1332 (West)

[3] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C.A. § 1331 (West)

[4] (a) Accuracy and fairness of credit reporting

    The Congress makes the following findings:

        (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

        (2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

        (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

        (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

(b) Reasonable procedures

    It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C.A. § 1681 (West)

Solutions, Inc., on September 25, 2020, removed this lawsuit to this federal forum citing federal question jurisdiction. All defendants consented to the removal to this federal forum as required by Title 28 U.S.C. § 1446(b)(2)[5]. No one disputes that the Fair Credit Reporting Act is a federal enactment; accordingly, this court finds that it possesses federal question subject matter jurisdiction which embraces lawsuits structured on the United States Constitution and federal enactments. *See United States v. Eli Lilly & Co., Inc.*, 4 F.4th 255, 261 (5th Cir. 2021) and *Washington v. Direct Gen. Ins. Agency*, 130 F. Supp. 2d 820, 825 (S.D. Miss. 2000).

## II.   FACTUAL BASIS

Plaintiff Michelle Barnett (hereinafter referred to as "Barnett") requested, and defendant American Express National Bank (hereinafter referred to as "American Express") opened an American Express Business Gold Rewards credit card account ending in 8001 (hereinafter referred to as the "Account") on or about May 26, 2010. American Express mailed Barnett her credit card along with a copy of the cardmember agreement governing the Account when the Account was opened. All American Express cardmember agreements, including Barnett's, provide that use of the credit card constitutes acceptance of the agreement. Barnett, thereafter, began to use the card.

On or about July 12, 2011, and October 11, 2013, American Express mailed Barnett updates to the cardmember agreement governing the Account. The Arbitration Agreement,

---

[5] (b) Requirements; generally.--(1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

   (2)(A) When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.

      (B) Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.

      (C) If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.

28 U.S.C.A. § 1446 (West)

contained within the 2012 cardmember agreement and operative 2013 cardmember agreement (hereinafter referred to as the "Cardmember Agreement"), provides the following, relevant, language:

> Claims Resolution
>
> . . . You may reject the arbitration provision by sending us written notice within 45 days after your first card purchase, or by February 15, 2013, whichever is later. See Your Right to Reject Arbitration below.
>
> For this section, ["]you and us["] includes any corporate parents, subsidiaries, affiliates or related persons or entities. Claim means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. Claim includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account. . .
>
> Arbitration
>
> You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.
>
> If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.
>
> Initiating Arbitration
>
> . . . You or we may otherwise elect to arbitrate any claim at any time unless it has been filed in court and trial has begun or final judgment has been entered. . . .
>
> Continuation
>
> This section will survive termination of your Account . . . .

After receiving the updated cardmember agreements in October 2012, and October 11, 2013, Barnett made purchases on the Account. Barnett did not elect to reject the Arbitration Agreement in the Cardmember Agreement.

Barnett alleges that consumer background reports issued by Equifax Information Services, LLC (hereinafter referred to as "Equifax"); Trans Union, LLC (hereinafter referred to as "TransUnion"); and Experian Information Solutions, Inc. (hereinafter referred to as "Experian") (hereinafter collectively referred to as the "Bureaus") contained inaccurate information about her Account. According to Barnett, sometime in 2016, an unknown person had made multiple fraudulent charges to her Account. She further claims she disputed the fraudulent charges multiple times with American Express. Allegedly, she says, despite knowing the charges were fraudulent, American Express charged off the Account as "an unpaid debt and reported [Barnett's] American Express account to Defendants Experian, Equifax, and Trans Union as a derogatory, charged-off account for inclusion on [Barnett's] Experian, Equifax, and TransUnion consumer reports, thereby damaging [her] credit history".

Barnett ultimately paid in full the amount she says she believed she owed for all legitimate charges made on her American Express credit card, leaving unpaid the supposedly fraudulent charges as the only remaining balance on the credit card. American Express, either in 2017 or early 2018, reported the balance for the alleged fraudulent charges on Plaintiff's American Express credit card to Experian, Trans Union and Equifax for inclusion on the Plaintiff's credit reports as a charged-off, delinquent debt. According to defendants, the total charged-off amount is $2,855.74.

On the dates: September 28, 2018; October 23, 2018; and October 29, 2018, Barnett informed American Express *in writing*, that she had elected to exercise her right to arbitrate American Express's claim that she owed the "fraudulent" charges.

Barnett's letters to American Express dated September 28, 2018, October 23, 2018, and October 29, 2018, all contain the following relevant language:

> Dispute Reference Number NGN5076
>
> This letter is in response to your letter dated [September 10, 2018; October 10, 2018; and October 17, 2018] (copy enclosed)
>
> I dispute the fraudulent charges on this alleged (sic) account. American Express was made aware of these charges within 30 days of the alleged fraud. We have provided copies of the disputed charges to Angela Martin in November of 2016, and Antonio Martin in November[,] 2017. Despite my attempts to dispute these charges, you have continued to attempt to collect these disputed, fraudulent charges and to report it (sic) to a credit agency. Please provide me with information and documentation of your investigation into these charges, including, without limitation, any information or correspondence between you and Apple.
>
> As per the FDCPA, I have the right to request proper validation of the alleged debt.
>
> *I elect private contractual arbitration via JAMS to resolve any disputes between us.*

[Docket nos. 65-1, 65-2, and 65-3] (Emphasis added).

In spite of Barnett's arbitration request, American Express filed a collections lawsuit against Barnett in the County Court of Madison County, Mississippi on May 9, 2019, seeking a judgment against her for the disputed balance on Barnett's American Express credit card.

Even after American Express' suit against her, Barnett disputed American Express' claims. On the dates of July 13, 2019; February 3, 2020; April 28, 2020; and July 14, 2020, Barnett continued her challenge and questioned American Express' commitment to investigate the supposedly inaccurate information. Barnett filed this lawsuit in state court on August 24, 2020.

### III.   ANALYSIS

The Federal Arbitration Act (hereinafter referred to as "FAA") found at Title 9 U.S.C. § 1 *et seq*. provides that:

> A party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Section 2 of the FAA mandates that a binding arbitration agreement in a contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490 (1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Pursuant to the FAA, arbitration must be compelled where: (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claim at issue. *See Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003). An arbitration agreement governed by the FAA is presumed to be valid and enforceable. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985). The party resisting arbitration bears the burden of showing that the arbitration agreement

7

is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

    a. *Arbitration Agreement Validity*

The parties do not dispute whether the Arbitration Agreement is valid. The parties executed a valid arbitration agreement that Barnett accepted by her use of the card without objecting in writing to arbitration. Accordingly, this court finds that the Arbitration Agreement is valid.

    b. *Arbitration Agreement Scope*

The parties also do not dispute whether the Arbitration Agreement encompasses the disputes of the parties, both in state court and this federal forum. The Arbitration Agreement broadly encompasses "any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us. . ." The term "claim", as used in the Arbitration Agreement, includes "claims based upon contract, tort, fraud, statute, regulation, common law and equity" and expressly includes "claims that arise from or relate to . . . any account created under any of the agreements, or any balances on any such account [and] . . . benefits and services related to card membership." Accordingly, this court finds that the Arbitration Agreement encompasses the parties' conflict in this lawsuit.

    c. *Waiver*

"Although parties may have an agreement to arbitrate, '[t]he right to arbitrate a dispute, like all contractual rights, is subject to waiver.'" *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014) (quoting *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009)). A party seeking to compel arbitration waives its right to arbitrate when it (1) "substantially invokes the judicial process" and (2) thereby causes "detriment or prejudice" to the other party. *Id*. (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)).

Barnett argues that American Express waived its right to arbitration because: it substantially invoked the judicial process by filing its state court collections action against her; that she was prejudiced because she had to expend attorney fees and that *res judicata* may preclude her from raising some arguments in the state court collections action after an arbitrator's ruling; and that American Express waived by ignoring her requests to arbitrate the state court collections action before American Express filed its lawsuit.

A party who resists arbitration on the basis of waiver bears a considerably heavy burden, and any doubts regarding a waiver should be resolved in favor of arbitration. *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986) ("The burden on one seeking to prove a waiver of arbitration is a heavy one[.]"); *Sibley v. Tandy Corp.*, 543 F.2d 540, 542 (5th Cir. 1976) (same); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999) ("a party alleging waiver of arbitration must carry a heavy burden"); *Associated Builders v. Ratcliff Constr. Co.*, 823 F.3d 904, 905 (5th Cir. 1987) (same); *General Guaranty Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929, n.5 (5th Cir. 1970) ("[o]nce the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver").

"[A] party only invokes the judicial process to the extent it litigates a specific claim it subsequently wants to arbitrate." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328 (5th Cir. 1999). Barnett cites *Vine v. PLS Fin. Servs., Inc.*, 689 F. Appx 800 (5th Cir. 2017) for her assertion that American Express invoked the judicial process, thereby waiving arbitration.

This court pauses here to distinguish various cases submitted by American Express in its efforts to validate its collections lawsuit under the Arbitration Agreement. We begin with *Hilton v. Midland Funding LLC*, 2016 WL 1253273, at *5 (E.D. Mich. Mar. 31, 2016), aff'd in part, vacated in part, 687 F. App'x 515 (6th Cir. 2017). In *Hilton* the United States Court of Appeals

for the Sixth Circuit determined that the District Court had erred in finding that the *Hilton* defendants had waived the right to arbitrate the plaintiff's claims. The *Hilton* court found that the arbitration agreement expressly contained a provision that required the arbitrator, not the district court, should rule on questions of the enforcement of the arbitration agreement.

Next is *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 957 (N.D. Ohio 2009) which only stands for the proposition that where the parties engaged in extensive discovery should the court find waiver.

Then, American Express cited *Hodson v. Javitch, Block & Rathbone*, LLP, 531 F. Supp. 2d 827, 831 (N.D. Ohio 2008). The key holding there is that filing of a collectionss action in state court does not necessarily waive arbitration, where the facts showed that the defendant had filed a collectionss action in state court, which it ultimately voluntarily dismissed for improper venue. The *Hodson* plaintiff then filed his Fair Debt Collectionss Practices Act lawsuit in federal court and the defendant moved for arbitration.

*Schwartz v. CACH, LLC*, 2014 WL 298107, at *3 (D. Mass. Jan. 27, 2014), *Morrow v. Soeder*, 2006 WL 2855024, at *3 (E.D. Mo. Oct. 3, 2006), and *Fields v. Howe*, 2002 WL 418011, at *7–8 (S.D. Ind. Mar. 14, 2002) are all similar, simply holding that the court should conduct a fact-based analysis to determine whether the parties had waived arbitration by invoking the judicial process.

The Arbitration Agreement here is valid, controlling and unmistakable. It is binding. It is clear in its terms, terms crafted by American Express. What is confusing or ambiguous abut the following contractual language found int the section entitled Claims Resolution?

    a. For this section, ["]you and us["] includes any corporate parents, subsidiaries, affiliates or related persons or entities. Claim means any current or future claim, dispute or controversy relating to your Account(s),
    b. Arbitration

       You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.

    c. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.

       Initiating Arbitration

    d. . . . You or we may otherwise elect to arbitrate any claim at any time unless it has been filed in court and trial has begun or final judgment has been entered. . . .

Yet, American Express completely ignored Barnett's request for arbitration, choosing instead to file a Mississippi state court collections action against her. American Express' state court action mirrors the "claim" that Barnett wages against American Express' "inaccurate billing" against her. Barnett disputes whether she owes the sum; American Express says she does, and, by its state court lawsuit, seeks a judicial judgment against her.

Under Mississippi jurisprudence "[a] breach -of-contract case has two elements: (1) 'the existence of a valid and binding contract,' and (2) a showing 'that the defendant has broken, or breached it.'" *Liberty Mut. Ins. Co. v. Mississippi Transportation Comm'n*, 317 So. 3d 937, 947 (Miss. 2021) (citing *Maness v. K&A Enterprises of Mississippi, LLC*, 250 So. 3d 402, 415 (Miss. 2018)). To this court's eye, American Express' state court collectionss lawsuit and Barnett's claim against American Express wherein she challenges the validity of the disputed indebtedness are married features to both lawsuits.

For the element of prejudice, Barnett points to the attorney fees and expenses American Express' lawsuit has forced upon her. Defendants have no good answer, saying only that Barnett

would have incurred the same costs had she, as she claims, wanted to arbitrate the collections action in state court.

"[P]rejudice . . . refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Subway Equipt. Leasing Corp.*, 169 F.3d at 327. This court agrees with Barnett that she has been prejudiced in terms of delay and expense.

Defendants here ignored Barnett's multiple written elections to arbitrate, requests sent seven (7) months before American Express filed its collections lawsuit in state court. Barnett cites *Leja v. Brousseau Mgmt.Co.,* 443 F.Supp. 3d 714 (M.D. La. 2020)(collecting cases). Defendants respond that the cases collected by *Leja* are inapplicable to the lawsuit *sub judice*. This court will now discuss each case collected by *Leja*.

In *Brown v. Dillard's Inc*., 430 F.3d 1004 (9th Cir. 2005), the plaintiff filed a wrongful termination claim for mandatory arbitration and the employer/defendant refused to arbitrate. Thereafter, the plaintiff filed a lawsuit in state court, which the employer/defendant removed to federal court and moved to arbitrate. The United States Court of Appeals for the Ninth Circuit held that the employer/defendant's refusal to submit to mandatory arbitration before the lawsuit was filed was inconsistent with its contractual obligation.

In *O.J. Distributing, Inc. v. Hornell Brewing Co*., 340 F.3d 345 (6th Cir. 2003), the United States Court of Appeals for the Sixth Circuit found that the defendant had waived its right to arbitrate by engaging with the plaintiff in thirteen (13) months of pre-litigation negotiations and two more months of negotiations after litigation had been filed, during which time the defendant denied "the existence of the Agreement and, therefore, the arbitration provision." 340 F.3d at 357. The *O.J.* court held that: "[d]efendant [had] slept on its [arbitration] rights for approximately

fifteen months . . . while [p]laintiff incurred costs associated with the matter and was prejudiced as a result." *Id*. at 358.

In *In re Tyco Int'l Ltd. Sec. Litig*., 422 F.3d 41 (1st Cir. 2005) the United States Court of Appeals for the First Circuit found an express waiver of arbitral rights where the defendant objected in writing to the arbitration. The arbitrator dismissed the arbitration relying upon defendant's written objection. Plaintiff filed its lawsuit. After plaintiff had filed its lawsuit, defendant then moved the court to compel arbitration.

In *Robinson v. Alston*, 596 F. App'x 871 (11th Cir. 2015) the court stayed the federal litigation, on the motion of the parties, so that they may engage in arbitration. The parties failed to commence arbitration. The district court reopened the case at the urging of the plaintiffs after several months of the parties exchanging information. One year after the district court reopened the case, the defendant moved to compel arbitration. The United States Court of Appeals for the Eleventh Circuit found that the defendant had acted "inconsistently with his desire to arbitrate [the] case by ignoring correspondence from the Plaintiffs seeking to initiate arbitration proceedings." *Id*. 873.

To summarize: this court finds that American Express here has waived arbitration. American Express substantially invoked the judicial process of state court by filing a collections action in state court. Barnett attempted on at least three (3) occasions, in writing, to initiate arbitration over a year before American Express filed that collectionss action. American Express does not dispute that Barnett sent it letters requesting arbitration, nor does it dispute that it did not respond to Barnett's requests for arbitration over the disputed charges.

Further, Barnett has suffered prejudice; she had been forced to hire an attorney to fight American Express' state court collections lawsuit and to defend American Express' attempt here

in federal court to attack her in a second litigation demanding arbitration, all the while completely ignoring the express language contained in its *own* Arbitration Agreement. American Express' calloused behavior not only ignored Barnett's attempts to enforce her rights under the Arbitration Agreement, but American Express, instead of responding, filed in state court a collections action which, from its inception, was on juridicial quicksand.

    d.  Stay

Section 3 of the FAA requires that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3 (emphasis added). Due to this court's ruling that American Express waived arbitration, its request for a stay must be denied.

### IV.   CONCLUSION

**IT IS, THEREFORE, ORDERED that the defendant American Express National Bank's Motion to Compel Arbitration [Docket no. 55] is hereby DENIED.**

**IT IS FINALLY ORDERED that the parties shall contact United States Magistrate Judge LaKeysha Isaac's chambers to request a Rule 16 scheduling conference within ten (10) days of the entry of this order.**

**SO ORDERED this the 14th day of September, 2021.**

                                        s/ HENRY T. WINGATE
                                        **UNITED STATES DISTRICT COURT JUDGE**