**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSSISSIPI**
**NORTHERN DIVISION**

**MICHELLE BARNETT**                                                          **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO.: 3:20-CV-623-HTW-LGI**

**AMERICAN EXPRESS NATIONAL BANK;**
**EXPERIAN INFORMATIO SOLUTIONS, INC.;**
**EQUIFAX INFORMATION SERVICES, LLC;**
**and TRANS UNION, LLC**                                           **DEFENDANT**

---

**ORDER**

---

This controversy stems from an arbitration agreement between the plaintiff, Michelle

Barnett ("Barnett") and defendant American Express National Bank ("American Express").

Barnett filed the lawsuit *sub judice* on August 24, 2020, in the Circuit Court of Madison County,

Mississippi, alleging that the defendants- American Express; Experian Information Solutions, Inc.;

Equifax Information Services, LLC; and Trans Union LLC. - had violated the Fair Credit

Reporting Act ("FRCA"), Title 15 U.S.C. § 16814 *et seq*[1].

---

[1] (a) Accuracy and fairness of credit reporting
    The Congress makes the following findings:
        (1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit
    reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine
    the public confidence which is essential to the continued functioning of the banking system.
        (2) An elaborate mechanism has been developed for investigating and evaluating the credit
    worthiness, credit standing, credit capacity, character, and general reputation of consumers.
        (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer
    credit and other information on consumers.
        (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities
    with fairness, impartiality, and a respect for the consumer's right to privacy.
 (b) Reasonable procedures
    It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures
    for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a
    manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy,
    and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C.A. § 1681 (West)

On September 30, 2020, Defendants removed this lawsuit from the Circuit Court of Madison, Mississippi, to this federal forum. Thereafter, on December 18, 2020, American Express moved to compel arbitration of Barnett's FRCA claims [Docket no. 55]. Barnett, however, opposed such motion, alleging that American Express had waived its right to arbitration when it repeatedly rejected Barnett's requests to arbitrate, choosing instead to file a state court collections lawsuit against Barnett, seeking to recover $2,855.74 in allegedly unpaid credit card debt.

On September 14, 2021, this court ruled in Barnett's favor and issued an Order [Docket no. 85] denying American Express's Motion to Compel Arbitration. Aggrieved by this court's decision, American Express appealed this court's Order to the United States Court of Appeals for the Fifth Circuit.

 On July 21, 2022, the Fifth Circuit vacated this court's ruling and remanded this case for reconsideration. That Honorable Court reasoned that this court did not have the benefit of two decisions, which may be relevant to this dispute, said decisions which were issued after this court's ruling: *Forby v. One Techs., L.P.*, 13 F.4th 460 (5th Cir. 2021); and *Morgan v. Sundance, Inc.*, 596 U.S. 411, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022).

Having now reconsidered Defendant's Motion to Compel Arbitration under the edicts of *Morgan* and *Forby*, this court finds that neither case offers authority contrary to the court's previous judgment. Accordingly, this court confirms its previous ruling for the reasons stated below.

## I.   PERTINENT BACKGROUND

This court, in its earlier Order, discussed the facts leading up to this lawsuit; however, to assist the reader, this court now recaps those factual and procedural matters pertinent to the inquiry at hand.

On or about May 26, 2010, American Express opened an American Express Business Gold Rewards credit card account for Barnett ("the Account"). American Express mailed Barnett her credit card, along with a copy of the cardmember agreement governing the Account. All American Express cardmember agreements, including Barnett's, provide that use of the issued credit card constitutes acceptance of the agreement. Barnett, upon receipt of the card and the cardmember agreement, began using the card to make purchases.

On or about July 12, 2011, and October 11, 2013, American Express mailed Barnett updates to the original cardmember agreement, which updates included changes to the Arbitration Process. The Arbitration Agreement, contained within the 2012 cardmember agreement and the operative 2013 cardmember agreement ("Cardmember Agreement"), provide, *inter alia,* the following:

> **Claims Resolution**
>
> **… You may reject the arbitration provision by sending us written notice within 45 days after your first card purchase, or by February 15, 2013, whichever is later. See Your Rights to reject Arbitration below.**
>
> **For this section, ["]you and us["] includes any corporate parents, subsidiaries, affiliates or related persons or entities. Claim means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. Claim includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account. . .**

> *Arbitration*
>
> ***You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.***
>
> *Initiating Arbitration*
>
> ***.. You or we may otherwise elect to arbitrate any claim at any time unless it has been filed in court and trial has begun or final judgment has been entered…***
>
> *Continuation*
>
> ***This section will survive termination of your Account…***

[Docket no. 55-4]

After receiving the updated cardmember agreements in October 2012, and October 2013, Barnett continued to make purchases on the Account. Barnett never exercised her right reject the Arbitration Agreement in the Cardmember Agreement.

Barnett alleges that consumer background reports issued by Defendant Equifax Information Services, LLC (hereinafter referred to as "Equifax"); Defendant Trans Union, LLC (hereinafter referred to as "TransUnion"); and Defendant Experian Information Solutions, Inc. (hereinafter referred to as "Experian") (hereinafter collectively referred to as the "Bureaus") contained inaccurate information about her Account. According to Barnett, sometime in 2016, an unknown person had made multiple fraudulent charges to her Account. She further claims that she disputed the fraudulent charges multiple times with American Express. Barnett ultimately paid off the full amount owed for all charges she allegedly considered to be legitimate, leaving unpaid the supposedly fraudulent charges as the only remaining balance on the credit card. According to defendants, the total amount of these charges is $2,855.74.

Barnett alleges that despite her assertions of fraud, American Express charged off the Account as "an unpaid debt and reported [Barnett's] American Express account to [the Bureaus]

as a derogatory, charged-off account for inclusion on [Barnett's] Experian, Equifax, and TransUnion consumer reports, thereby damaging [her] credit history".

Barnett informed American Express, on three separate occasions: September 28, 2018; October 23, 2018; and October 29, 2018, *in writing*, that she had elected to exercise her right to arbitrate American Express's claim that she owed the "fraudulent" charges. [Docket nos. 65-1, 65-2, and 65-3].

American Express, despite Barnett's arbitration requests, filed a collections lawsuit against Barnett in the County Court of Madison County, Mississippi on May 9, 2019, seeking a judgment against her for the disputed balance on the credit card. Barnett alleges that she continued repeatedly to dispute American Express's charges. As stated *supra*, Barnett filed this lawsuit in state court on August 24, 2020. Once the defendants had properly removed this matter to federal court, American Express moved to compel arbitration of Barnett's claims.

This court, applying the test for waiver set out by United States Court of Appeals for the Fifth Circuit, held that American Express had waived its right to arbitration. This court found that "American Express substantially invoked the judicial process of state court by filing a collections action in state court." [Docket No. 85, 13].  This court further determined that "Barnett has suffered prejudice; she has been forced to hire an attorney to fight American Express' state court collections lawsuit and to defend American Express' attempt here in federal court to attack her in a second litigation demanding arbitration, all the while completely ignoring the express language contained in its *own* Arbitration Agreement." [Docket No. 85, 13-14]**.**

## II.   DISCUSSION

The Federal Arbitration Act ("FAA")[2] mandates that arbitration must be compelled where: (1) a valid agreement to arbitrate exists; and (2) the agreement encompasses the claim at issue. *See Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003). An arbitration agreement governed by the FAA is presumed to be valid and enforceable. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

The parties herein do not dispute that the Arbitration Agreement is valid; nor do they dispute whether the Arbitration Agreement encompasses the dispute *sub judice*, both in state court and this federal forum. The issue before this court, then, is whether American Express waived its right to arbitration.

### Circuit Split

When this court issued its Order denying Defendant's Motion to Arbitrate, Circuits across the nation had disagreed on the following issue: Under the Federal Arbitration Act ("FAA"), should a party be required to demonstrate prejudice after the opposing party waived its contractual right to arbitrate by participating in litigation, in order for such waiver to be binding and irrevocable?

---

[2] *See* 9 U.S.C. § 4 *et seq.* (A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of he subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration  proceed in the manner provided for such agreement.).

Nine Circuits [3], including the Fifth Circuit, had invoked "the strong federal policy favoring arbitration" in support of an arbitration-specific waiver rule demanding a showing of prejudice. Two Circuits[4] had rejected such a rule.  The Supreme Court resolved this issue in *Morgan v. Sundance Inc*., 596 U.S. 411, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022) by siding with the minority.  The Fifth Circuit, as a court of review of errors, can neither decide facts nor make legal conclusion in the first instance; consequently, that Honorable Court vacated this court's Order denying Motion to Compel, and remanded Barnett's case to this district court for reconsideration in light of *Morgan* and *Forby*.

### ***Morgan v. Sundance, Inc.***

The United States Supreme Court in *Morgan* held that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA" *Morgan v. Sundance, Inc.*, 596 U.S. 411, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022).

In *Morgan*, Petitioner, an hourly employee at a franchise owned by Respondent, brought a nationwide collective action against Respondent despite signing a binding confidential arbitration agreement to arbitrate any employment dispute. Respondent initially denied the existence of such an agreement. After the district court denied the Respondent's motion to dismiss, Respondent answered the complaint, asserting fourteen (14) affirmative defenses, none of which referred to the parties' arbitration agreement. Approximately eight months later, however, Respondent moved to stay the litigation and compel arbitration under the FAA.

---

[3] First; Second; Third; Fourth; Fifth; Sixth; Eighth; Ninth; and Eleventh Circuits. See *Morgan*., 142 S. Ct. at 1712, n.1.

[4] Seventh; and District of Columbia.

The United States District Court applied the Eighth Circuit's test for waiver, under which "a party waives its contractual right to arbitration if it knew of the right; 'acted inconsistently with that right'; and –critical here– 'prejudiced the other party by its inconsistent actions,'". *Id.* at 415. The district court determined that Petitioner had shown the requisite prejudice and Respondent had waived its contractual right to arbitration. *Id.*  The Eighth Circuit disagreed and ordered that the parties go to arbitration. Thereafter, the United States Supreme Court granted certiorari.

The Supreme Court determined that "the Eighth Circuit was wrong to condition a waiver of the right to arbitrate on a showing of prejudice." *Id.* at 417.  The Court reasoned that "waiver […] 'is the intentional relinquishment or abandonment of a known right.'" *Id.* The Court expounded further that, "to decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party. That analysis applies to the waiver of a contractual right, as of any other." *Id.*

While the *Morgan* Court recognized the FAA's policy favoring arbitration, the Court expressly stated that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Id.* at 418. "'Th[e] policy,' we have explained, 'is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'" *Morgan*, 596 U.S. at 418. *See Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010). The policy, stated the Court, is to make "arbitration agreements as enforceable as other contracts, but not more so." *Morgan*, 596 U.S. at 418. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12 (1967).

The Supreme Court determined that "the usual federal rule of waiver [for contracts] does not include a prejudice requirement."  *Id*. Accordingly, the Court vacated the Eight Circuit's judgment and remanded the case for further proceedings.

Unlike the district court in *Morgan*, this court sits in the Fifth Circuit. Under Fifth Circuit precedent, "[a] party waives arbitration by 'substantially invok[ing] the judicial process to the detriment or prejudice of the other party." *Forby v. One Techs., L.P.*, 13 F.4th 460, 465 (5th Cir. 2021) (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 393, 497 (5th Cir. 1986)). "We evaluate waiver under a two-step test, asking first whether a party substantially invoked the judicial process, and second, whether it caused the other party prejudice." *Forby*, 13 F.4th at 465. "For waiver purposes, 'a party only invokes the judicial process to the extent it litigates a *specific claim* it subsequently seeks to arbitrate." *Id.* The U.S. Supreme Court in *Morgan* resolved the circuit split when it decided that prejudice is **not** a requirement for waiver. This Court, then, must determine only whether American Express substantially invoked the judicial process.

This court finds that it did. American Express substantially invoked the judicial process by filing a collections action in state court. This court previously has made statements regarding American Express's complete disregard for Barnett's requests for arbitration, and its decision to file a Mississippi state court collections action against her. American Express' state court action mirrors the claim that Barnett wages against American Express here- "inaccurate billing". Barnett disputes whether she owes the sum; American Express says she does, and, by its state court lawsuit, seeks a judicial judgment against her.

As stated above, Barnett attempted on at least three (3) occasions, in writing, to initiate arbitration a year prior to American Express's state collection action. American Express did not

dispute that Barnett sent the letters requesting arbitration. American Express, in fact, failed to respond to Barnett's requests.

To this court's eye, without considering prejudice, American Express's state court collections lawsuit substantially invoked the judicial process to the extent it sought to collect the disputed debt which it now seeks to arbitrate. This court, thus, finds that the *Morgan* decision does not conflict with this court's Order denying arbitration.

### ***Forby v. One Techs., L.P.***

The Fifth Circuit's decision in *Forby* also fails to provide grounds for overturning this court's previous decision. In *Forby*, the Fifth Circuit held that "waiver as to originally-asserted state claims does not extend to later-pled federal claims." *Forby*, 13 F.4th at 466.

The plaintiff in *Forby* filed a class action lawsuit in Illinois, claiming violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). The defendant moved to dismiss on several grounds. The district court granted in part and denied in part the defendant's motion. Subsequently, defendant moved to compel arbitration. The district court granted the motion to compel; however, the Fifth Circuit reversed the decision on appeal, concluding that defendant had waived its right to arbitrate since it "'pursued and partially obtained a dismissal with prejudice,' showing 'a desire to resolve the dispute in litigation rather than arbitration.'" *Id.* at 463.

After the Fifth Circuit remanded the case to the district court, the plaintiff was granted leave to file an amended complaint. The amended complaint added a new claim under the Credit Repair Organizations Act ("CROA"). The defendant again moved to compel arbitration claiming, *inter alia*, "it should at least be able to arbitrate the CROA claim because it 'could not possibly have waived its right to arbitrate' that new claim, which was raised after the previous waiver occurred." *Id.* at 464.

The Fifth Circuit agreed with the Respondent, reiterating its previous holding "waiver of arbitral rights is claim-specific," ultimately determining "[defendant] did not waive the right to arbitrate the [CROA] claims raised in the second amended complaint because those claims were not in the case when it waived by litigation the right to arbitrate the [ICFA] claim." *Id.* at 462; 466-67.

Aside from the Fifth Circuit's longstanding precedent that waiver must be determined on a claim-by-claim basis, this Court finds *Forby* does not apply to the facts of this case. Unlike *Forby*, Barnett has not filed any subsequent amended complaint, asserting any new claim, under state or federal law, since the issuance of this Court's Order [Docket No. 85].

## III.   CONCLUSION

The essential facts here are follows: Barnett disputed an American Express as fraudulent on more than one occasion. American Express denied her outcries and, on May 9. 2019, filed a collection action against her in state court, On August 24, 2020, the filed an action, also in state court, asserting claims under the Fair Credit Reporting Act against Defendants American Express; Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC. Her lawsuit, as that of American Express, at its nucleus, pertained to her contention of a fraudulent debt, which affected her credit standing among the reporting agencies. Defendant Experian removed this action to this federal court, with the consent of the other defendants. Thereafter, American Express filed its motion for arbitration.

This court stands by its earlier decision that American Express's Motion for Arbitration must be denied; it waived that right because American Express substantially invoked the judicial process by filing a collections action in state court, which languished there from May 9, 2019, through the time period of Barnett having to respond with her own lawsuit and its removal to this court and through the time period when American Express decided to finally file its Motion for Arbitration [Docket no. 135].

**SO ORDERED THIS THE 3rd DAY OF July, 2024.**

/s/HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE